DCP:ADR/DJM
F. #2021R00699

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
\*   JUNE 7, 2024   \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

NOGUAN MARVELLOUS EBOIGBE,
    also known as "Randall Olson,"
    "Martin Roberto"
    and "Carlos Eduardo,"

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. 24-CR-240
(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(b)(1), 1343, 1349,
1956(a)(1)(B)(i), 1956(h), 1957(a), 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C. § 2461(c))

Judge Natasha C. Merle

Magistrate Judge Robert M. Levy

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendant and Relevant Terms and Definitions</u>

        1.    The defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," was a citizen of Nigeria and a resident of Nigeria.

        2.    Law Firm-1 through Law Firm-6, entities the identities of which are known to the Grand Jury, were law firms based in the United States that provided escrow services to clients.

        3.    A business email compromise scheme ("BEC scheme") is a form of cyber-enabled financial fraud. In a typical BEC scheme, a malicious actor compromises legitimate business email accounts through computer intrusion techniques or social engineering and uses

1

those accounts to cause the unauthorized transfer of funds. Techniques for perpetrating these schemes include identity theft, spoofing of emails and websites and the use of malware.

II. <u>The Fraudulent Schemes</u>

4. In or about and between October 2020 and March 2022, both dates being approximate and inclusive, the defendant NOGUAN MARVELLOUS EBOIGBE perpetrated a series of fraudulent BEC schemes that resulted in more than $10 million in losses by individuals and small businesses located within the Eastern District of New York and throughout the United States.

5. As one part of the schemes, victim-individuals involved in real estate transactions received fraudulent emails purporting to be from legitimate parties to those transactions. The emails instructed them to wire funds they believed to be related to the real estate transactions to specified bank accounts. The fraudulent email accounts that contacted the victims closely resembled, but were slightly different from, the email addresses of the legitimate parties to the transaction (a process known as "spoofing").

6. As another part of the BEC schemes, employees of victim-companies received fraudulent emails purporting to be from legitimate vendors or other business partners of those companies directing them to transfer funds to specified bank accounts. The employees were also defrauded through email spoofing and received fraudulent emails from accounts that closely resembled, but were slightly different from, the email addresses of the legitimate vendors and business partners.

7. In each case, after the victims executed the wires in accordance with the fraudulent instructions, the transferred funds were misappropriated from the victims, laundered through accounts of unwitting third parties, and sent to and through accounts controlled by the

defendant NOGUAN MARVELLOUS EBOIGBE's co-conspirators, including to accounts outside the United States.

A. The July 2021 Real Estate BEC Scheme

8. As one example of the BEC schemes, in or about July 2021, an individual residing in Brooklyn, New York, whose identity is known to the Grand Jury ("Victim-1"), was in the process of purchasing a new home. On or about July 6, 2021, Victim-1 received a series of emails purporting to be from Victim-1's lawyer directing Victim-1 to wire "closing funds" to a specified bank account. However, the emails, on which Victim-1's spouse and real estate broker were also copied, were fraudulent emails that were not sent by Victim-1's lawyer. Instead, they were sent from an email account that closely resembled, but was slightly different from, the legitimate email account of Victim-1's lawyer (the "Fraudulent Lawyer Account"). The Fraudulent Lawyer Account was controlled by a co-conspirator working with the defendant NOGUAN MARVELLOUS EBOIGBE ("Co-Conspirator-1"), an individual whose identity is known to the Grand Jury. Later that day, Victim-1 and Victim-1's spouse wired approximately $450,000, which comprised the balance of the purchase price of the new home, to the bank account provided in the fraudulent emails.

9. The account that received Victim-1's $450,000 payment belonged to an escrow attorney, an individual whose identity is known to the Grand Jury (the "Escrow Attorney"). The Escrow Attorney had been contacted by a purported new client who identified himself as "Randall Olson," and who used the email address "randallolson648@gmail.com." However, "Randall Olson" was a fraudulent identity, and the email address was controlled by the defendant NOGUAN MARVELLOUS EBOIGBE. EBOIGBE, posing as "Olson," told the Escrow Attorney that he would send the Escrow Attorney funds for the purchase of construction

3

equipment. He then sent the Escrow Attorney instructions as to where the Escrow Attorney should send those funds to execute the purchase. In fact, the Escrow Attorney received Victim-1's home purchase funds and passed them along to accounts controlled by EBOIGBE's co-conspirators.

10. In particular, at the direction of the defendant NOGUAN MARVELLOUS EBOIGBE, on or about July 7, 2021, the Escrow Attorney wired approximately $160,000 of the Victim-1 funds to an account controlled by EBOIGBE's co-conspirators. On or about July 14, 2021, at EBOIGBE's direction, the Escrow Attorney wired approximately $150,000 of the Victim-1 funds to an account controlled by EBOIGBE's co-conspirators. On or about that same day, at EBOIGBE's direction, the Escrow Attorney wired approximately $100,000 of the Victim-1 funds to an account controlled by EBOIGBE's co-conspirators. The funds were then sent to and through a series of accounts controlled by EBOIGBE's co-conspirators, including ultimately to accounts outside the United States.

B. Additional Fraudulent BEC Schemes

11. In or about and between October 2020 and March 2022, the defendant NOGUAN MARVELLOUS EBOIGBE facilitated at least six other BEC schemes in substantially the same manner as described above. In each instance, using the "Randall Olson" identity or other fraudulent identities, EBOIGBE contacted law firms posing as a potential client, told them that he would send them funds for a business transaction, and instructed them to wire those funds to specified accounts. In each instance the funds received by the attorneys were in fact fraudulent proceeds of real estate and small business BEC schemes.

12. For example, in or about and between October and December 2020, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-1 from the email address

"olsonrandalls@aol.com." EBOIGBE identified himself as "Randall Olson" and requested that Law Firm-1 provide escrow services for the purchase of construction equipment. In or about and between December 23, 2020 and January 6, 2021, Law Firm-1 received wires totaling more than $500,000, which were in fact proceeds of fraudulent BEC schemes. Law Firm-1 was subsequently informed by its bank that the wires were fraudulent, and the funds were removed from the law firm's account.

13.     In or about January 2021, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-2 from the email address "mroberto@martirosoft.com." EBOIGBE identified himself as "Martin Roberto" and requested that Law Firm-2 help facilitate the payment of a legal settlement between two companies. On or about April 19, 2021, Law Firm-2 received two wire transfers totaling approximately $1.2 million which were in fact proceeds of a fraudulent BEC scheme. On or about and between April 23, 2021 and April 27, 2021, at EBOIGBE's direction, Law Firm-2 wired substantially all of those funds to accounts specified by EBOIGBE.

14.     In or about April 2021, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-3 from the email address "c.eduardo@carsotecnologia.com." EBOIGBE identified himself as "Carlos Eduardo" and requested that Law Firm-3 help facilitate the payment of a legal settlement between two companies. On or about April 27, 2021, Law Firm-3 received a wire of approximately $3.9 million, which was in fact proceeds of a fraudulent BEC scheme. In or about and between April 30, 2021 and May 5, 2021, at EBOIGBE's direction, Law Firm-3 wired substantially all of those funds to accounts specified by EBOIGBE.

15.     In or about and between June and September 2021, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-4 from the email address

"randalolsonp@aol.com." EBOIGBE identified himself as "Randall Olson" and requested that Law Firm-4 provide escrow services for the purchase of construction equipment. On or about September 24, 2021, Law Firm-4 received a wire of approximately $246,000, which was in fact proceeds of a fraudulent BEC scheme. On or about September 27, 2021, at EBOIGBE's direction, Law Firm-4 wired substantially all of those funds to an account provided by EBOIGBE.

16. In or about January 2022, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-5. EBOIGBE identified himself as "Randall Olson" and requested that Law Firm-5 provide escrow services for the purchase of construction equipment. On or about January 6, 2022 and January 31, 2022, Law Firm-5 received wire transfers of approximately $1,450,000 and $1,543,840, respectively, which were in fact proceeds of two fraudulent BEC schemes. Thereafter, at EBOIGIBE's direction, Law Firm-5 wired substantially all of those funds to accounts provided by EBOIGBE.

17. In or about February 2022, the defendant NOGUAN MARVELLOUS EBOIGBE emailed Law Firm-6 from the email address "randalolsonp@aol.com." EBOIGBE identified himself as "Randall Olson" and requested that Law Firm-6 provide escrow services for the purchase of construction equipment. On or about February 25, 2022, Law Firm-6 received a wire of approximately $1.3 million, which was in fact proceeds of a fraudulent BEC scheme. In or about and between February 28, 2022 and March 5, 2022, at EBOIGIBE's direction, Law Firm-6 wired substantially all of those funds to accounts provided by EBOIGBE.

18. In each case, after the law firms executed the wires in accordance with the instructions provided to them, the fraudulent proceeds were sent to and through a series of

accounts controlled by the defendant NOGUAN MARVELLOUS EBOIGBE's co-conspirators, including ultimately to accounts outside the United States.

## COUNT ONE
(Wire Fraud Conspiracy)

19. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between October 2020 and March 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud individuals and businesses by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails and other electronic communications and money transfers, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Wire Fraud)

21. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

22. On or about July 6, 2021, within the Eastern District of New York and elsewhere, the defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," together with others, did knowingly and

7

intentionally devise a scheme and artifice to defraud individuals involved in real estate transactions by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails and other electronic communications to Victim-1 and the Escrow Attorney causing the initiation of a wire transfer from Victim-1 to the Escrow Attorney.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT THREE
(Money Laundering Conspiracy)

23.   The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

24.   In or about and between October 2020 and March 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," together with others, did knowingly and intentionally conspire:

(a)   to conduct one or more financial transactions in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to engage in one or more monetary transactions, to wit: deposits, withdrawals, transfers and exchanges of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FOUR
(Money Laundering)

25. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

26. In or about July 2021, within the Eastern District of New York and elsewhere, the defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," together with others, did knowingly and intentionally conduct one or more financial transactions in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## COUNT FIVE
(Unlawful Monetary Transactions Over $10,000)

27. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

28. In or about July 2021, within the Eastern District of New York and elsewhere, the defendant NOGUAN MARVELLOUS EBOIGBE, also known as "Randall Olson," "Martin Roberto" and "Carlos Eduardo," together with others, did knowingly and intentionally engage in one or more monetary transactions, to wit: deposits, withdrawals, transfers and exchanges of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

29. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH FIVE

31.    The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Three through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

32.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the court;

      (d)      has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/
_____
FOREPERSON

*By Carolyn Pokorny, Assistant US Attorney*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK